WILLIAM M. RAGLAND, JR.
(GA. STATE BAR NO. 591888)
WOMBLE CARLYLE SANDRIDGE
& RICE PLLC
275 17TH STREET, NW
SUITE 2400
ATLANTA, GA  30363-1017
PHONE:  (404) 888-7466
FAX:      (404) 870-2401
WRAGLAND@WCSR.COM

*ATTORNEY FOR DEFENDANT*
*GRAPHIC PACKAGING INTERNATIONAL INC.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN FRANCISCO TECHNOLOGY  INC., <br><br> PLAINTIFF, <br><br> V. <br><br> ADOBE SYSTEMS INCORPORATED, THE BRITA PRODUCTS COMPANY, DELTA FAUCET COMPANY, EVANS MANUFACTURING INC., THE EVERCARE COMPANY, GRAPHIC PACKAGING INTERNATIONAL INC., MAGNUM RESEARCH INC., PAVESTONE COMPANY LP, THE PROCTOR & GAMBLE COMPANY, S.C. JOHNSON & SON INC., SPECTRUM BRANDS INC., SUPER SWIM CORP., UNILOCK INC., WEST COAST CHAIN MFG. CO., <br><br> DEFENDANTS. | **Civil Action No.:** <br> **5:09-CV-06083-RS** <br><br> **DEFENDANT GRAPHIC PACKAGING INTERNATIONAL, INC.'S MOTION TO SEVER AND TRANSFER VENUE TO THE NORTHERN DISTRICT OF GEORGIA** <br><br> [Filed concurrently with Notice of Motion and Motion to Sever and Transfer Venue to the Northern District of Georgia] <br><br> Judge:          Hon. Richard Seeborg <br> Date:            April 8, 2010 <br> Time:           1:30 p.m. <br> Courtroom:   Courtroom 3, 17th Floor <br><br> **Complaint Filed December 30, 2009** |

1

2

**NOTICE OF MOTION**

3

PLEASE TAKE NOTICE, that on April 8, 2010 at 1:30 p.m. before the

4

Honorable Judge Richard Seeborg, at the United States District Court for the Northern

5

District of California, 450 Golden Gate Avenue, San Francisco, California 94102, in

6

Courtroom 3, Defendant Graphic Packaging International, Inc. ("GPI"), by and through

7

its counsel of record, will move the Court pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. §

8

9

1404 (a) for an Order severing and transferring Plaintiff San Francisco Technology, Inc.'s

10

("SF Tech") claim against GPI to the United States District Court for the Northern

11

District of Georgia.

12

**CONCISE STATEMENT OF RELIEF SOUGHT**

13

GPI respectfully requests that the claim against it be severed from the claims

14

against other Defendants pursuant to Fed. R. Civ. P. 21, and the case be transferred to the

15

16

United States District Court for the Northern District of Georgia pursuant to 28 U.S.C.

17

§1404 (a).  GPI has concurrently filed motions to dismiss pursuant to Fed. R. Civ. P.

18

12(b)(1), 12(b)(6) and 9(b).  GPI has also concurrently joined in The Procter & Gamble

19

Company's Motion to Stay the proceedings in this case.

20

This Motion is based upon this Notice, the attached Memorandum of Points and

21

Authorities, the concurrently filed Declaration of Barry D. Biddle, the pleadings and the

22

23

papers on file in this action, and upon such other oral argument and documentary

24

evidence as may be presented at the hearing of this Motion.

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 8

I.    Introduction ............................................................................................ 8

II.    Statement of Issues to be Decided ............................................................. 9

III.    Statement of Facts .................................................................................. 9

    a.    Plaintiff's Complaint Includes 14 Separate and Distinct "Counts" of False Marking Against 14 Disparate Defendants ................................................... 9

    b.    GPI Is A Packaging Provider Servicing Many Industries ................................. 10

    c.    Plaintiff's Complaint Alleges False Marking Of One GPI Beverage Product ..... 10

    d.    GPI Is A Delaware Corporation With Headquarters And Relevant Manufacturing Facilities Located In Georgia ................................................................... 11

    e.    California Has No Connection To GPI's Alleged Patent Marking Or Manufacturing Activities ............................................................................ 11

    f.    Plaintiff's Connections To This Forum Are Not Extensive And Are Largely Irrelevant. ............................................................................................ 12

IV.    Argument ............................................................................................ 12

    g.    Plaintiff's Claims Against GPI Should Be Severed From the Rest of Plaintiff's Lawsuit Because There Is No Nexus Between The Claims Against GPI And The Claims Against Any Other Defendants ................................................... 12

        1.    GPI Cannot Be Jointly and Severally Liable With Any Other Defendant for the Alleged False Marking ............................................................................ 14

        2.    GPI's Alleged False Marking Did Not Arise from the Same Transaction or Occurrence or Series of Transactions of Occurrences As the Alleged False Marking of the Other Defendants. ............................................................................ 16

    h.    This Georgia-Centered Dispute Should Be Transferred to the Northern District of Georgia, The More Convenient And Appropriate Forum ........................... 17

        3.    This action against GPI could have been brought in the Northern District of Georgia ............................................................................................... 18

        4.    The Transfer Factors Strongly Favor Transfer to the Northern District of Georgia ............................................................................................... 18

            a)    Plaintiff's choice of forum is entitled to little weight ................................... 20

b)   Georgia's connections to the parties and this action, combined with California's lack of connections, strongly support transfer to Georgia ............... 22

c)   The convenience of witnesses and parties favors transfer ........................... 23

d)   The interests of justice favor transfer ............................................................ 24

e)   The alleged acts in issue were performed in Georgia .................................. 24

f)   Transfer will maximize the ease of access to the relevant proof ................. 25

V.   Conclusion ............................................................................................................. 25

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Anrig v. Ringsby United,*

4

    603 F.2d 1319 (9th Cir. 1979) ............................................................ 14

5

*BMC Res., Inc. v. Paymentech, L.P.,*

6

    498 F.3d 1373 (Fed. Cir. 2007)............................................................ 16

7

*Clontech Laboratories, Inc. v. Invitrogen Corp.,*

8

    406 F.3d 1347 (Fed. Cir. 2005)............................................................ 25

9

*Coleman v. Quaker Oats Co.,*

10

    232 F.3d 1271 (9th cir. 2000) ......................................................... 14, 18

11

*Coughlin v. Rogers,*

12

    130 F.3d 1348 (9th Cir. 1997) ................................................... 14, 17, 18

13

*Desert Empire Bank v. Ins. Co. of No. America,*

14

    623 F.2d 1371 (9th Cir. 1980) .......................................... 14, 15, 16, 18

15

*Forest Group, Inc. v. Bon Tool Co.,*

16

    590 F.3d 1295 (Fed. Cir. 2009)............................................................ 17

17

*Garcia v. 3M Co.,*

18

    2009 WL 3837243 (N.D. Cal. Nov. 16, 2009) ................................. 20, 21

19

*George v. Smith,*

20

    507 F.3d 605 (7th Cir. 2007) .............................................................. 17

21

*Hatch v. Reliance Ins. Co.,*

22

    758 F.2d 409 (9th Cir. 1985) .............................................................. 18

23

*Hoffman v. Blaski,*

24

25

26

27

28

363 U.S. 335, 80 S.Ct. 1084 (1960) ............................................................................ 18

*Inherent.com v. Martindale-Hubbell*,

420 F.Supp.2d 1093 (N.D. Cal.2006) ............................................................... 21, 22

*John v. Panera Bread Co.*,

2008 WL 2811827 (N.D. Cal. 2008) ........................................................... 22, 23, 26

*Jones v. GNC Franchising, Inc.*,

211 F.3d 495 (9th Cir. 2000) ...................................................................... 18, 19

*Levinson v. Regal Ware, Inc.*,

14 U.S.P.Q.2d 1064 (D.N.J. 1989) .......................................................................... 26

*Lou v. Belzberg*,

834 F.2d 730 (9th Cir. 1987) ..................................................................... 21, 23

*Morris v. Safeco Ins. Co.*,

2008 WL 5273719 (N.D. Cal. Dec 19, 2008) ......................................................... 21

*Pergo, Inc. v. Alloc, Inc.*,

262 F. Supp.2d 122 (S.D.N.Y. 2003)...................................................................... 14

*Stewart Org., Inc. v. Ricoh Corp.*,

487 U.S. 22, 108 S.Ct. 2239 (1988)........................................................................ 19

*Teknekron Software Systems, Inc. v. Cornell University*,

1993 WL 215024 (N.D. Cal. June 4, 1993) ........................................................... 26

*Wynn v. National Broadcasting Co.*,

234 F. Supp.2d 1067 (C.D. Cal. 2002) ............................................................ 14, 18

**<u>Statutes</u>**

28 U.S.C. § 1391............................................................................................... 19

---

28 U.S.C. § 1395 ................................................................................................ 19

**Other Authorities**

4 Moore's Federal Practice § 21.02 (Matthew Bender 3d ed.) ......................................... 14

**Rules**

Fed. R. Civ. P. 20 ................................................................................. 9, 13, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **Introduction**

Plaintiff San Francisco Technology, Inc. ("Plaintiff") filed a Complaint (Dkt. 1) containing 14 separate and distinct "counts" of false marking against 14 different defendants under 35 U.S.C. §292.  Each count involves (a) different defendants that sell different and unrelated products in almost entirely different industries, (b) different patent numbers, (c) different instances of patent marking and (d) different decisions to mark. None of the 14 claims contain any common or overlapping occurrence or transaction.  In short, there is no factual relationship whatsoever between the claims alleged against Graphic Packaging International, Inc. ("GPI") and any of the claims alleged against any of the other 13 defendants.  The Complaint against GPI fails to meet the requirements for joinder under Fed. R. Civ. P. 20 and should therefore be severed under Fed. R. Civ. P. 21. The claims against GPI should also be transferred to the Northern District of Georgia under 28 U.S.C. § 1404, because Georgia is the "center of gravity" for the claims against GPI.  The occurrences and transactions relevant to the claims against GPI occurred in Georgia.  The witnesses, documents and evidence relevant to the claims against GPI are located in Georgia.  In contrast, California has no significant connection to the claims against GPI.  Plaintiff's choice of this forum should be given minimal consideration. Plaintiff is merely a *qui tam* plaintiff that is only contributing attorneys to the lawsuit. Furthermore, Plaintiff only has a very short existence and history in California.  The convenience of the parties and witnesses, as well as the interests of justice, strongly support transfer.

II.     **Statement of Issues to be Decided**

1.     Whether Plaintiff has improperly joined the claim against GPI with the claims against the other thirteen named defendants in one lawsuit, thereby requiring severance under Fed. R. Civ. P. 21.

2.     Whether the claim against GPI should be transferred to the United States District Court for the Northern District of Georgia under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interests of justice.

III.    **Statement of Facts**

A.     **Plaintiff's Complaint Includes 14 Separate and Distinct "Counts" of False Marking Against 14 Disparate Defendants**

Plaintiff asserts that "each defendant has falsely marked products with patents . . . with intent to deceive the public." (Dkt. 1 ¶1)  Fourteen defendants are named in the Complaint.  The Complaint does not allege that any of the defendants are related, have common ownership, or share common places of business.  (Dkt. 1 ¶¶ 3-16; 20-33)  The Complaint makes separate, unrelated allegations regarding false marking as to each individual defendant named in the Complaint.  (*Id.*)  None of the allegations for the various defendants include the same patent numbers, patent markings or decisions to mark.  (*Id.*)  None of the allegations for the various defendants include the same products. (*Id.*)  The allegations for the various defendants do not include any of the same occurrences or transactions.  (*Id.*)   In short, there are no overlapping facts common to the claims against any of the various defendants, much less common to the claims against GPI.  (*Id.*)

**B.     GPI Is A Packaging Provider Servicing Many Industries**

Graphic Packaging International ("GPI") is a company that solves packaging challenges for the world's leading brands.  GPI is a global supplier of consumer folding cartons, beverage packaging, bags, labels, active microwave packaging, and flexible and specialty packaging.  In addition, GPI offers a range of paperboard grades, high performance packaging machinery, and services.  GPI offers six product categories, one of which is Packaging.  One of the seven types of Packaging offered is Beverage Packaging.  Included in Beverage Packaging are three groups:  beer, carbonated beverages, and non-carbonated beverages.  Each of these groups has a variety of packaging products, from six-pack basket carriers for bottles to fully enclosed cartons for large multi-packs of beverages. (Declaration of Barry D. Biddle ("Biddle Decl.") ¶5)

**C.     Plaintiff's Complaint Alleges False Marking Of One GPI Beverage Product**

Plaintiff's Complaint (Dkt. 1) alleges GPI falsely marks only one of its numerous packaging products.  The Complaint alleges that "Twin Stack®," used "to package beverages such as Dr Pepper, Diet Dr Pepper, Sunkist, 7 Up, Diet 7 Up, Pepsi, and Caffeine Free Diet Pepsi," is marked as follows: "Manufactured under one or more of the following patents: Des 350,480  4,331,289  4,396,143  5,297,725  Other patents pending."  (Dkt. 1 ¶74)  The Complaint alleges that three of the four listed patents are expired.  (Dkt. 1 ¶75)  Plaintiff also alleges that "Graphic Packaging has sold its falsely marked products in California and in this District and/or in the stream of commerce with knowledge that they would be sold in California and in this District."  (Dkt. 1 ¶25)

**D.    GPI Is A Delaware Corporation With Headquarters And Relevant Manufacturing Facilities Located In Georgia**

GPI is a Delaware corporation with its headquarters and principal place of business located in Marietta, Georgia.  (Biddle Decl. ¶6)  All company operations are ultimately managed from the Georgia headquarters.  (Biddle Decl. ¶9)  All decisions relating to the sale and promotion of its products in the United States rest with the officers, managers, and employees located in Georgia.  GPI's in-house legal department is located in Marietta, Georgia.  (Biddle Decl. ¶10)  All decisions relating to whether a product should be marked with a patent number are made in Marietta, Georgia.  (*Id.*)  In addition, GPI's manufacturing facility for beverage packaging products, including the accused Twin Stack® product, is located in Georgia.  (Biddle Decl. ¶8)  All documents relating to such decisions and manufacturing are located in Georgia.  (Biddle Decl. ¶11)  GPI has a graphics department located in Concord, New Hampshire that provides graphics for the Twin Stack® product.  (Biddle Decl. ¶12)

**E.    California Has No Connection To GPI's Alleged Patent Marking Or Manufacturing Activities**

California has no connection to GPI's alleged activities relating to patent marking or manufacturing for GPI's Twin Stack® product.   Although GPI has facilities in California that manufacture consumer product packaging, no beverage products (including the Twin Stack® product) are designed, manufactured, sold or distributed by these facilities in  California.  (Biddle Decl. ¶¶13, 14)  None of the GPI witnesses or documents relevant to this case is located in California.  (Biddle Decl. ¶¶ 12-14)  The only conceivable connection of GPI with this forum pled by Plaintiff is that GPI's products are sold in California and are in the stream of commerce.  (Dkt. ¶25)

**F.     Plaintiff's Connections To This Forum Are Not Extensive And Are Largely Irrelevant.**

Plaintiff is a Delaware corporation that was only registered as a business entity in California 14 days prior to the filing of this lawsuit.  (Biddle Decl. ¶16, Ex. B)  Plaintiff's California address listed with the Secretary of State is the same address as Plaintiff's litigation counsel of record in this case.  (Biddle Decl. ¶16, Ex. B)  On information and belief, Plaintiff was formed for the express purpose of bringing this *qui tam* action and is owned or controlled, directly or indirectly, by Plaintiff's counsel of record.  On information and belief, Plaintiff has no activities in California (or elsewhere) other than prosecuting this lawsuit.

In any event, as a *qui tam* relator that has not alleged or suffered any personal harm, Plaintiff's officers, employees or owners are unlikely to have or present any relevant original documentary or testimonial evidence in this case.  Relevant original evidence in a *qui tam* action will almost entirely be within the possession of the defendant accused of false marking.

IV.     **Argument**

   A.  **Plaintiff's Claims Against GPI Should Be Severed From the Rest of Plaintiff's Lawsuit Because There Is No Nexus Between The Claims Against GPI And The Claims Against Any Other Defendants**

The Court has the authority to sever claims against improperly joined parties. Fed. R. Civ. P. 21.  Joinder of multiple defendants in one action is proper only if the defendants are jointly and severally liable, or if the actions arise "out of the same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(2).  A party seeking joinder must assert: (1) a right to relief based on the same

transaction or occurrence; and (2) a common question of law or fact with respect to all parties. *Desert Empire Bank v. Ins. Co. of No. America*, 623 F.2d 1371, 1375 (9th Cir. 1980). Common questions of law or fact do not exist merely because claims against all defendants are based on the same general theory of law. *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir.1997); *see also Wynn v. National Broadcasting Co.*, 234 F. Supp.2d 1067, 1078 (C.D. Cal. 2002).

Even if the claims in this case had not been misjoined, claims may be severed under Fed. R. Civ. P. 21 when, for example, venue is improper as to one defendant. *Anrig v. Ringsby United*, 603 F.2d 1319, 1324 (9th Cir. 1979); *see also* 4 Moore's Federal Practice § 21.02 (Matthew Bender 3d ed.). Courts have broad discretion in determining whether to order severance under Rule 21. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th cir. 2000); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) ("As long as there is a discrete and separate claim, the district court may exercise its discretion and sever it.")

Similar to patent infringement actions, when a plaintiff in a false marking action fails to allege the defendants are jointly and severally liable for the alleged false marking, or that a defendant's false marking is in any way related to another defendant's false marking, joinder under Federal Rule of Civil Procedure 20 is improper. *See, e.g., Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp.2d 122, 127-128 (S.D.N.Y. 2003) (claims severed for improper joinder, and cases transferred to alternate venue).

There is no relationship whatsoever between the false marking claims asserted against any of the hodge podge of disparate defendants, products and patents that Plaintiff has inexplicably joined in a single suit. The GPI patents alleged by Plaintiff to be falsely

1    marked on GPI's Twin Stack® product have no conceivable relationship to any of the

2    other defendants' patents alleged by Plaintiff to be falsely marked upon the other

3    defendants' respective products. GPI's Twin Stack® product itself has no relationship

4    whatsoever to any of the various products of the other defendants. There is no

5    commonality of facts, transactions or occurrences between the claim against GPI and the

6    claims against the other defendants, the products of which range from lint removers to

7    software to firearms. Indeed, Plaintiff does not even make such a requisite allegation in

8    the Complaint.

9

10                  1.    GPI Cannot Be Jointly and Severally Liable With Any Other
                          Defendant for the Alleged False Marking
11

12          Federal Rule of Civil Procedure 20(a) allows joinder of parties ". . . if there is

13   asserted against (the defendants) jointly, severally, or in the alternative, any right to relief

14   in respect to or arising out of the same transaction, occurrence, or series of transactions of

15   occurrences and if any question of law or fact common to all defendants will arise in the

16   action." Fed. R. Civ. P. 20(a); *see Desert Empire Bank*, 623 F.2d at 1374. Plaintiff does

17   not assert that GPI is jointly or severally liable for the alleged false marking. (*See* Dkt. 1

18   ¶¶ 74-77) Indeed, Plaintiff only asserts that "each defendant has falsely marked products

19   with patents . . . with intent to deceive the public." (Dkt. 1 ¶1) Plaintiff has not asserted

20   joint and several liability because it cannot. The other defendants, products and patents

21   named in this action are all utterly unrelated to GPI and its products and patents. The

22   other defendants participate in industries entirely different from that of GPI, and the

23   accused false marking is directed to unrelated patents and products. For each defendant,

24   the table below sets out the products and industries to which Plaintiff's claims relate:

25

26

27

28

| Defendant | Accused Product/Industry |
|---|---|
| Adobe | Software application/font products (Dkt. 1 ¶36) |
| Brita | Water filtration products (Dkt. 1 ¶51) |
| Delta | Faucet products (Dkt. 1 ¶56) |
| Evans | Beverage wrenches (Dkt. 1 ¶62) |
| Evercare | Lint remover products (Dkt. 1 ¶70) |
| GPI | Packaging products (Dkt. 1 ¶ 74) |
| Magnum | Firearm products (Dkt. 1 ¶79) |
| Pavestone | Landscaping products (Dkt. 1 ¶84) |
| Proctor & Gamble | Toothbrushes/paper towels/tissues (Dkt. 1 ¶90) |
| SC Johnson | Shaving products (Dkt. 1 ¶101) |
| Spectrum | Aquarium products (Dkt. 1 ¶107) |
| Super Swim | Swimming products (Dkt. 1 ¶113) |
| Unilock | Landscaping products (Dkt. 1 ¶ 118) |
| West Coast Chain | Key chain/retractor products (Dkt. 1 ¶124) |

The alleged false marking did not result "from the participation and combined action(s) of" the defendants. *See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007) (analyzing joint liability of patent infringement). To the contrary, in comparison to GPI the other defendants operate completely disparate businesses. Joinder, therefore, is not proper under this test. *See id.; Desert Empire Bank*, 623 F.2d at 1374.

2.   GPI's Alleged False Marking Did Not Arise from the Same Transaction or Occurrence or Series of Transactions of Occurrences As the Alleged False Marking of the Other Defendants.

Nor is joinder proper under the same-transaction-or-occurrence test.  The first question under Rule 20 - whether the Plaintiff's claims arise out of the same transaction or occurrence -"refers to similarity in the factual background of a claim." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  Having all the claims based on the same general theory of law is not sufficient to satisfy this requirement.  *Id.* at 1351.  There is no similarity of the factual background of a false marking claim against different defendants, with different patent numbers, different markings, and different products.  False patent marking claims focus on the highly-fact particularized intent to deceive element.  *See, e.g., Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009) (analyzing the factual findings of the district court on intent to deceive requirement).  The facts surrounding these issues will be entirely different for GPI and each of the other defendants.  Indeed, it is difficult even to imagine a single overlapping factual issue that will arise between the claims against GPI and the other defendants, much less one that is significant enough to justify joinder.

"The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim ... may join, [ ] as independent or as alternate claims, as many claims ... as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  The purpose of this rule is "to prevent the sort of morass (a multiple claim, multiple defendant) suit produce(s). . . .."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  As the court in

*Wynn* recognized in a similar set of circumstances, such a suit "would present the jury with the hopeless task of trying to discern who did and said what to whom and for what reason." *Wynn v. National Broadcasting Co.*, 234 F. Supp.2d 1067, 1089 (C.D. Cal. 2002).

In sum, Plaintiff cannot establish joinder is proper under either the joint and several liability test, or the same transaction or occurrence test. Accordingly, the Court should sever Plaintiff's claim against GPI. *See Desert Empire Bank*, 623 F.2d at 1374; *Coughlin,* 130 F.3d at 1351 (9th Cir.1997); *Wynn,* 234 F. Supp.2d 1067, 1078 (C.D. Cal. 2002). Even if joinder were proper, the Court should sever the claims against GPI under Rule 21 to avoid unavoidable jury confusion and prejudice. *See Coleman,* 232 F.3d at 1296 (upholding a district court's decision to sever under Rule 21 based on prejudice and jury confusion even though both prongs of Rule 20(a) were met).

## A.  This Georgia-Centered Dispute Should Be Transferred to the Northern District of Georgia, The More Convenient And Appropriate Forum

Venue is appropriately transferred, "[f]or the convenience of parties and witnesses, [or] in the interest of justice." 28 U.S.C. § 1404(a). This inquiry requires a two-step analysis. First, the court must determine whether the action "might have been brought" in the potential transferee court. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44, 80 S.Ct. 1084 (1960); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). If so, then the court makes an "individualized, case-by-case determination of convenience and fairness," weighing the convenience of the parties, the convenience of the witnesses, and the interest of justice. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted).   In making this determination, the Ninth Circuit provides factors this Court may consider, including: "(1) the location where the relevant

agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of the compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones*, 211 F.3d at 498-99. A district court has broad discretion in deciding a motion for transfer of venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239 (1988).

> 3. <u>This action against GPI could have been brought in the Northern District of Georgia</u>

This false marking action against GPI could have been brought in the Northern District of Georgia. *See* 28 U.S.C. §§ 1391, 1395(a). GPI is a Delaware corporation with its corporate headquarters and principal place of business located in Marietta, Georgia. GPI is subject to personal jurisdiction and venue is proper in the Northern District of Georgia. Additionally, as shown below, any occurrences and transactions giving rise to alleged liability for false patent marking would have occurred in Georgia. Accordingly, the claim against GPI could have been brought by Plaintiff in the Northern District of Georgia.

> 4. <u>The Transfer Factors Strongly Favor Transfer to the Northern District of Georgia</u>

Nearly all of the applicable *Jones* factors – including convenience to parties and witnesses, where the decisions at issue were made, the respective parties' contacts with California, the contacts to California relating to the cause of action, and the ease of access to proof – heavily favor transfer to Georgia. The vast majority of the witnesses are

located in Georgia, and it is unlikely that even one witness (including any of plaintiff's witnesses) is located in California.  (Biddle Decl. ¶11)  Not only do these circumstances impact the convenience of the witnesses, but litigation costs will be increased if numerous Georgia witnesses are required to travel across the country for trial.  The other relevant evidence, including documentary evidence, is located in Georgia.  (Biddle Decl. ¶11)  Plaintiff's choice of forum is neutral at best because Plaintiff only created its presence in California days before filing suit, and the only appreciable presence Plaintiff has in California are its litigation counsel.  While neither venue is more familiar with the federal law controlling this Complaint and it does not appear that the availability of the compulsory processes is a strong factor either way, all the other factors weigh in favor of transfer.

In *Garcia v. 3M Co.*, 2009 WL 3837243 (N.D. Cal. Nov. 16, 2009), this Court transferred an action to the District of Minnesota after examining and applying the *Jones* factors.  The plaintiff in *Garcia* was a class-action plaintiff and the choice of forum was "largely fortuitous."  (*Id.* at *2.  In addition, the Court "could rationally infer forum shopping."  *Id.*  For these reasons, plaintiff's choice of forum was afforded little weight.  Plaintiff was unable to name any witnesses located in California and defendant named several witnesses for whom Minnesota was the more convenient forum.  *Id.* at *3.  In determining that the convenience of the parties weighed in favor of transfer, the Court noted that while documents are electronic and witnesses can be deposed near their residence, many of the plaintiff class members resided in Minnesota and defendant was situated in Minnesota.  *Id.* at *3-4.  The Court also recognized that when an action involves an incident occurring in a particular locale, the public interest is in having the

controversy adjudicated in that locale.  *Id.* at *4.  The Court noted that 3M is a significant

employer and corporate citizen of Minnesota.  *Id.*

Similar to *Garcia*, Plaintiff's choice on forum was largely fortuitous and could be

construed as forum shopping.  No discernable witness is located in California and instead

the vast majority of relevant witnesses are located in Georgia.  The action involves the

alleged act of false patent marking with an intent to deceive, an act that would have

occurred – if at all – in Georgia.  Also, Georgia has an interest in adjudicating the

actions of a significant employer and corporate citizen such as GPI.  (Biddle Decl. ¶¶ 7-8)

> a)   *Plaintiff's choice of forum is entitled to little weight*

Although a plaintiff's choice of forum is ordinarily entitled to some weight, when

the plaintiff's chosen forum is not his residence, or when the plaintiff's forum lacks a

significant connection to the events that gave rise to the Complaint, the deference given

to Plaintiff's choice of forum is slight, if any.  *See Inherent.com v. Martindale-Hubbell*,

420 F.Supp.2d 1093, 1100 (N.D. Cal.2006) (motion to transfer venue granted where only

connection to chosen forum was the alleged relocation of the plaintiff's business and two

witnesses after the events at issue occurred); *Morris v. Safeco Ins. Co*., 2008 WL

5273719, *4 (N.D. Cal. Dec 19, 2008).  "If the operative facts have not occurred within

the forum of original selection and that forum has no particular interest in the parties or

the subject matter, the plaintiff's choice is entitled only to minimal consideration."  *Lou*

*v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

A *qui tam* plaintiff represents the Government and has not been personally

injured.  As a result, Plaintiff will contribute little to the action, other than attorneys.

Also, when a plaintiff brings suit on behalf of others, the plaintiff's choice of forum

carries little weight.  *See John v. Panera Bread Co.*, 2008 WL 2811827 (N.D. Cal. 2008) (granting a motion to transfer and concluding that when an individual representing a class is the named plaintiff, the plaintiff's choice of forum is given less weight).  This is especially true when the plaintiff appears to have engaged in forum shopping.  *See Inherent.com v. Martindale-Hubbell*, 420 F. Supp.2d 1093, 1100-01 (N.D. Cal. 2006) (refusing to give plaintiff's choice of venue much weight when it appeared plaintiff was "forum shopping" and plaintiff's presence in California was "illusory at best" when, *inter alia*, plaintiff's business address was listed as the same as that of its California counsel")

Plaintiff is a Delaware corporation.  While the Complaint asserts Plaintiff has a principal place of business in San Jose, California, the address for the corporation on the California Secretary of State website is the same as the address of the litigation attorneys, down to the same suite number: 333 W San Carlos St., Suite 1650, San Jose CA 95110.  (Biddle Decl. ¶16, Ex. B)  The Plaintiff registered as a business entity with the State of California on December 16, 2009, only fourteen days before the lawsuit was filed.  (Biddle Decl. ¶16, Ex. B)  No website for the plaintiff entity was found.  On information and belief, Plaintiff was formed for the express purpose of bringing this *qui tam* action and is owned or controlled directly or indirectly by Plaintiff's counsel of record.  On information and belief, Plaintiff has no activities in California (or elsewhere) other than prosecuting this lawsuit.

In any event, as a *qui tam* relator that has not suffered any personal harm, Plaintiff's officers, employees or owners are unlikely to have or present any relevant original documentary or testimonial evidence in this case.  Relevant original evidence in a *qui tam* action will largely be within the possession of the defendant accused of false

marking.  Accordingly, it can hardly be said that the "center of gravity" of the claim against GPI is in California or that Plaintiff's choice of forum should be afforded weight. *See, e.g., Johns*, 2008 WL 2811827, *5.

> b)    *Georgia's connections to the parties and this action, combined with California's lack of connections, strongly support transfer to Georgia*

In judging the weight to be accorded to a plaintiff's choice of forum, a court must consider the extent of both the plaintiff's and the defendant's contacts with the forum, including those relating to the plaintiff's cause of action.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citation omitted).  "If the operative facts have not occurred within the forum of the original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."  *Id.*

The operative facts in this case against GPI, such as the decisions to mark and the intent behind those decisions, occurred in Georgia.  (Biddle Decl. ¶10)  GPI's inside legal counsel is located in Georgia.  (Biddle Decl. ¶7)  The GPI product-in-suit was manufactured at GPI's plant in Georgia.  (Biddle Decl. ¶8)  GPI's advertising and packaging design decisions for the United States are managed in Georgia.   (Biddle Decl. ¶10)  GPI's entire business operations are directed from its headquarters in Georgia.  (Biddle Decl. ¶9)  In sharp contrast, none of the operative facts, including the decisions to mark products or manufacturing of the products, occurred in California.  None of GPI's contacts with California are relevant to this action.[1]   Also, as discussed above, Plaintiff itself has an extremely short history in the Northern District of California and Plaintiff

---

[1] GPI has consumer goods facilities in California, but these facilities do not design, manufacture, sell, or distribute, or have any relation to, the beverage packaging at issue in this litigation. (Biddle Decl. ¶14)

has little role to play in this case besides supplying counsel to prosecute the *qui tam* claims on behalf of the U.S. Government.  California has very little, if any, particularized interest in the subject matter of this dispute or the parties, especially in comparison to Georgia.

        *c)*        *The convenience of witnesses and parties favors transfer*

        The elements of the claims against GPI all revolve around GPI.  GPI's headquarters is located in Marietta, Georgia.  The key witnesses for the case - GPI's personnel - are nearly all located in Georgia.  (Biddle Decl. ¶11)  These Georgia witnesses might include David Scheible, President and CEO of GPI, Michael Schmal, GPI Senior Vice President, Beverage, Tod Hoyme, GPI Director of Sales for North American Soft Drink, Barry Biddle, GPI in-house counsel, and Donald Deakin, GPI Plant Manager of the Perry, Georgia facility.  (Biddle Decl. ¶7)  There should be no witnesses in California (none for GPI and most likely none for Plaintiff).  (Biddle Decl. ¶11)  Other possible locations for witnesses might include the GPI Graphics Department in Concord, New Hampshire.  (Biddle Decl. ¶12)  Georgia is much more convenient and inexpensive than California for Georgia witnesses and any New Hampshire witness, in terms of distance traveled, time zone and cost.  The large inconvenience for GPI in flying its witnesses and counsel across the entire country and three time zones for trial and pre-trial proceedings is not outweighed by the minimal inconvenience to plaintiff's counsel in litigating in Georgia.

1

*d)*       *The interests of justice favor transfer*

2

A § 1404(a) transfer serves to "'prevent the waste of time, energy, and money'

3

and 'to protect litigants, witnesses and the public against unnecessary inconvenience and

4

expense.'"  *Van Dusen*, 376 U.S. at 616.  California does not have a meaningful

5

connection to the misconduct alleged against GPI.  Again, no significant witness is

6

located in California, and California has no particularized interest in resolving the claim

7

against GPI.  Litigation under 35 U.S.C. §292 has recently skyrocketed with attorneys

8

creating entities for the sole purpose of filing a *qui tam* action such as this.  If the

9

registration of a foreign corporation such as Plaintiff to do business in California a few

10

weeks prior to filing suit in the plaintiff's preferred district controls the location of the

11

litigation, a loophole would exist to allow forum-shopping.

12

13

*e)*       *The alleged acts in issue were performed in Georgia*

14

While the *Jones* factors reference the location where the relevant agreements were

15

negotiated, more applicable to a false marking claim is the location where the allegedly

16

deceitful decisions to mark were made.  *See Clontech Laboratories, Inc. v. Invitrogen*

17

*Corp.*, 406 F.3d 1347, 1352-53 (Fed. Cir. 2005) ("[I]n order to establish knowledge of

18

falsity the plaintiff must show by a preponderance of the evidence that the party accused

19

of false marking did not have a reasonable belief that the articles were properly marked

20

(i.e., covered by a patent).  Absent such proof of lack of reasonable belief, no liability

21

under the statute ensues.").  Any decisions regarding marking products were made in the

22

GPI corporate headquarters in Marietta, Georgia. (Biddle Decl. ¶10)

23

24

25

26

27

28

f)     *Transfer will maximize the ease of access to the relevant proof*

"Litigation should proceed in that place where the case finds its 'center of gravity.'" *Teknekron Software Systems, Inc. v. Cornell University*, 1993 WL 215024 (N.D. Cal. June 4, 1993), citing *Levinson v. Regal Ware, Inc.*, 14 U.S.P.Q.2d 1064, 1065 n.3 (D.N.J. 1989).  *See also Johns*, 2008 WL 2811827, *5 (N.D. Cal. July 21, 2008) (concluding that the center of gravity occurred where key witnesses and documents were located).  The great bulk of documents pertaining to GPI's alleged marking activities are located in Georgia.  (Biddle Decl. ¶11)  No documents relevant to Plaintiffs allegations of false marking by GPI are likely to be located in California.  (Biddle Decl. ¶¶11-13)  The vast majority of key witnesses are located in Georgia.  (*Id.*)  None are in California.  (*Id.*)  Plainly, the "center of gravity" for the claims against GPI is in the Northern District of Georgia.

V.     **Conclusion**

For the foregoing reasons, GPI respectfully requests that Plaintiff's claim against GPI be severed from the claims of the other defendants and transferred to the U.S. District Court for the Northern District of Georgia.

Dated: March 1, 2010                          WOMBLE CARLYLE SANDRIDGE
                                              & RICE PLLC

                                     By:   /s/ *William M. Ragland, Jr.*
                                              William M. Ragland, Jr.
                                              *Attorney for Defendant*
                                              *Graphic Packaging International, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Certificate of Service**

The undersigned certifies that on March 1, 2010, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-4 and General Order 45. The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-5 and General Order 45 to accept that Notice as service of this document.

Dated: March 1, 2010                    WOMBLE CARLYLE SANDRIDGE
                                        & RICE PLLC

                                By:   */s/ William M. Ragland, Jr.*
                                        William M. Ragland, Jr.